UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

CASE NO. 26-CR-90 (SRN/ECW)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>v.<br><br>SHARMAINE MEADOWS<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **UNITED STATES' OMNIBUS MOTION IN LIMINE** |

The United States of America respectfully submits the following motions in limine.

## I. BACKGROUND

On May 7, 2026, a grand jury in this District returned an indictment charging Defendant Sharmaine Meadows ("Defendant") with health care fraud, that is, violations of 18 U.S.C. § 1347 and 18 U.S.C. § 2, in connection with a Medicaid fraud scheme. Dkt. 1. Trial is scheduled to commence on September 25, 2026. Dkt. 27.

Defendant owned and operated Cradle of Love, LLC ("Cradle"), which was based out of St. Paul, Minnesota. Defendant first enrolled as a provider in the Housing Stabilization Services ("HSS") Program in or around May 2020. The HSS Program was a program administered by the Minnesota Department of Human Services ("DHS") for Medicaid recipients and which was designed to help seniors and people with disabilities, including mental illness and substance use disorders, find and maintain housing. As an HSS Program provider, Cradle was reimbursed through Medicaid based on the services it claimed to provide at quarterly-hourly rates (15 minutes).

To enroll Cradle in the HSS Program and throughout its enrollment, Defendant signed agreements on behalf of Cradle with DHS in which she promised: to comply with all federal and

state statutes and rules relating to the delivery of services and submission of claims; assume full responsibility for the accuracy of claims; submit claims only after services had been provided; ensure that employees and contractors comply with requirements; maintain records that fully disclose the extent of services provided; and refund any overpayments received. At trial, the government anticipates proving that Defendant did not comply with these agreements and instead utilized Cradle to defraud Medicaid in several ways.

First, Defendant submitted, and directed others to submit, claims to Medicaid for HSS purportedly provided to Medicaid recipients which falsely inflated or overstated the amount of time spent providing services to the Medicaid recipient. For example, Defendant directed Cradle employees to report the maximum allowed amount of hours per Medicaid recipient per week, rather than reporting the time that was actually spent providing services to the Medicaid recipient.

Second, Defendant submitted, and directed others to submit, claims to Medicaid for HSS purportedly provided to Medicaid recipients that were never actually provided or for services that were not eligible for reimbursement. This included, inter alia, services purportedly provided to Medicaid recipients on dates and times when, in fact, those recipients were hospitalized and could not have received the claimed services. In total, from in around August 2020 through in or around October 2025, Cradle billed Medicaid approximately $4.3 million for HSS purportedly provided to Medicaid recipients and received nearly $3.7 million based on false and fraudulent claims.

## II. MOTIONS

The government respectfully moves the Court to preclude the evidence and argument described in Motions 1-10 described below.

## MOTION 1

**Defendant should be precluded from offering evidence of any benefits or services provided to uncharged beneficiaries as a defense to the charges in the Indictment.**

Defendant should be precluded from arguing, eliciting on direct or cross-examination, or offering any evidence at trial, of specific acts of good conduct, including evidence that uncharged beneficiaries received housing support services from Cradle of Love. Such evidence is improper under Federal Rule of Evidence 401 because it is not relevant to an issue before the jury. It also constitutes improper propensity evidence under Rule 404(b). To the extent that such evidence might have any probative value, it should nonetheless be excluded under Rule 403, because the probative value of such evidence is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading of the jury, undue delay, and waste of time.

In a fraud case, evidence of other instances where a defendant did *not* commit fraud is irrelevant to the question of whether she *did* commit fraud in the instances alleged. This is a well-settled proposition. Courts have repeatedly held that evidence that a defendant engaged in legal, honest conduct some of the time has no bearing on whether the defendant engaged in, or had knowledge of, the fraudulent conduct charged by the government. *United States v. Dimora*, 750 F.3d 619, 630 (6th Cir. 2014) ("For the same reasons that prior 'bad acts' may not be used to show predisposition to commit crimes, prior 'good acts' generally may not be used to show a predisposition not to commit crimes."); *United States v. Ellisor*, 522 F.3d 1255, 1270 (11th Cir. 2008) (affirming district court's ruling precluding the defendant from offering evidence of legitimate business activities because "evidence of good conduct is not admissible to negate fraudulent intent."); *United States v. Marrero*, 904 F.2d 251, 260 (5th Cir. 1990) (excluding defendant psychologist from offering evidence of legitimate billings in false claims act case

because it was irrelevant that the defendant "did not overcharge in every instance in which she had the opportunity to do so"); *United States v. Scarpa*, 897 F.2d 63, 70 (2d Cir. 1990) ("A defendant may not seek to establish his innocence . . . through proof of the absence of criminal acts on specific occasions."); *United States v. Heidecke*, 900 F.2d 1155 (7th Cir. 1990) ("Proof that a defendant acted lawfully on other occasions is not evidence that a defendant acted lawfully on the dates charged in the indictment.").

In addition, even if the Court determines there is some marginal relevance to such evidence, it still should be excluded as impermissible propensity evidence. Through such evidence and argument, Defendant would effectively be asking the jury to make the impermissible inference that, because there were *some* legitimate claims (i.e., claims which were appropriately billed for services that were actually provided) on occasions, all of the claims must therefore have been legitimate. Such an inference is not proper. *See, e.g.*, *Dimora*, 750 F.3d at 630.

## MOTION 2

**Defendant should be precluded from presenting evidence or argument which improperly introduces investigative steps not taken by the government.**

The government moves to preclude improper references to the government's investigation, including questioning or seeking to admit evidence of investigative steps not taken by the government.

Evidence that is irrelevant under Fed. R. Evid. 401, or that would confuse the issues and mislead the jury under Fed. R. Evid. 403, should be excluded. However, at trial the government anticipates that Defendant may seek to divert the jurors' attention from whether Defendant committed the charged crimes to irrelevant argument and inquiry about the government's investigation into the scheme to defraud the HSS Program. She should not be permitted to do so.

The "quality or bias of a criminal investigation occasionally may affect the reliability of particular evidence in a trial," but this is only true if the defendant can establish a connection between an omission and that evidence. *United States v. McVeigh*, 153 F.3d 1166, 1192 (10th Cir. 1998); *id*. ("There was no trial evidence whose reliability would have been undercut.… To have allowed McVeigh to put the government on trial because there might have been something more the government perhaps could have done…would inevitably divert the jury's attention from the issues of the trial."). Without making a specific and direct link between an investigative omission and a piece of relevant evidence, a defendant risks injecting the trial with the detrimental consequences that Rule 403 is designed to prevent. Fed. R. Evid. 403 ("unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time").

In *United States v. Zaccaria*, 240 F.3d 75 (1st Cir. 2001), for example, the defendant sought to question the case agent about why he did not administer a particular investigative tool, namely, polygraph tests, to certain witnesses. *Id*. at 80. The district court precluded that line of inquiry, finding it "wholly irrelevant, potentially confusing, and unfairly prejudicial." *Id*. The appellate court upheld the district court's evidentiary ruling, explaining:

> [T]he fact that polygraph tests ultimately were not administered could be attributable to any number of reasons (e.g., administrative oversight, lack of time, lack of resources, the personal proclivities of a specific agent, knowledge that the test results would be inadmissible at trial, and so on and so forth). Many (perhaps most) of these possible reasons have no bearing either on the government's bona fides or on the issues in this case. In the absence of a particularized showing that the government was not turning square corners, the district court acted well within its discretion in refusing to let defense counsel embark on a fishing expedition.

*Id*. at 81 (emphasis added). The court further recognized the potential prejudicial inference that could be drawn by the jury because of the defendant's proposed line of inquiry: "Testimony about the government's non-administration of polygraph examinations would be apt to spark an

unwarranted—and profoundly prejudicial—inference that the Secret Service agents believed the test results would be harmful to their cause." *Id*.

Other courts have similarly refused to permit irrelevant speculation about investigation steps or techniques not taken by the government, which have no probative value in determining a defendant's guilt. *See United States v. Veal*, 23 F.3d 985, 989 (6th Cir. 1994) (no abuse of discretion in the district court ruling, based on relevance grounds, that "the jury would not be called upon to determine whether the government's investigation had been good or bad"); *see also United States v. Saldarriaga*, 204 F.3d 50, 52–53 (2d Cir. 2000) ("The [district court] properly charged the jury to base its decision on the evidence or lack of evidence that had been presented at trial, and to focus solely on whether, in light of that evidence or lack of evidence, the jury was convinced beyond a reasonable doubt that the defendant was guilty of the crimes with which he was charged. The jury correctly was instructed that the government has no duty to employ in the course of a single investigation all of the many weapons at its disposal, and that the failure to utilize some particular technique or techniques does not tend to show that a defendant is not guilty of the crime with which he has been charged.").

In this case, or any other case for that matter, there are any number of reasons why an agent may or may not have taken a particular course of action, whether it be not administering a polygraph (as in *Zaccaria*), not interviewing a particular person, or not pursuing some other line of investigation. Defendant should not be permitted to take a detour from the trial to the investigation without demonstrating how such a line of attack is relevant and not misleading, confusing, or unduly prejudicial.

Accordingly, Defendant should be precluded at trial from making improper allegations, inquiry, or arguments before the jury about the government's investigation, including irrelevant or prejudicial questioning of investigative steps not taken by the government.

## MOTION 3

### Defendant should be precluded from eliciting testimony, otherwise introducing evidence, or arguing about the presence or absence of any particular person on the government's witness list or the government's plan or decision to call or not call any particular witness.

The government may elect not to call every witness on its list for a host of reasons. For example, a witness may become unavailable, or a witness's testimony may become cumulative or irrelevant due to the development of other evidence at trial. If a jury is informed, in a vacuum, that a person was on the government's witness list but was ultimately not called, the jury could easily become confused or place undue significance on a routine trial decision.

Defendant therefore should not be permitted to discuss the contents of the government's witness list in front of the jury. Further, if Defendant intends to discuss, suggest, or ask the jury to draw any inference from the government's decision not to call a witness (regardless of whether that witness appeared on the government's witness list), they must first show that the witness was "peculiarly within [the United States'] power to produce," and that the testimony would elucidate the conduct at issue. *United States v. Blakemore*, 489 F.2d 193, 195 (6th Cir. 1973) (internal citation omitted).

## MOTION 4

### Defendant should be precluded from making any argument or presenting any evidence concerning which other persons have or have not been charged in this or other cases.

This Court should prohibit Defendant from presenting evidence that other individuals or entities could have been charged in a like manner but were not. As a general matter, "[t]he

government's charging decisions are not proper subjects for cross-examination and argument." *United States v. Carneglia*, No. 08-CR-76, 2009 WL 185725 at *1 (E.D.N.Y. Jan. 27, 2009) (quoting *United States v. Re*, 401 F.3d 828, 832 (7th Cir. 2005)); *see also United States v. Larch*, 399 F. App'x 50, 55-56 (6th Cir. 2010) (guilt of another does not excuse defendant from liability for his own actions); *but see United States v. White*, 692 F.3d 235, 239 (2d Cir. 2012), *as amended* (Sept. 28, 2012) (rejecting "categorical bar on the admissibility of charging decisions").

The identity and number of individuals charged in connection with the overall scheme, the reasons behind the government's individualized charging decisions, and the comparative culpability of Defendant versus others involved in the scheme are all irrelevant and unfairly prejudicial subjects that should not be aired before the jury. *See, e.g.*, *United States v. Thompson*, 253 F.3d 700, *16 (5th Cir. 2001), *unpublished* (affirming grant of motion *in limine* to prevent defense counsel from comparing defendants' conduct with that of uncharged or immunized witnesses); *see also, e.g., Re*, 401 F.3d at 832 (government's exercise of prosecutorial discretion not a proper subject for cross-examination).

If Defendant here seeks to introduce evidence of these charging decisions, she would be merely distracting from the true issue in this trial: whether *she* committed the crimes for which *she* is charged in the Indictment. Such argument or examination before the jury would serve no other purpose than to prejudice the jury against the government by raising issues of prosecutorial discretion that have nothing to do with the crimes charged or the evidence presented *in this case.*

Accordingly, Defendant should be precluded from making arguments or comments to the jury, and from eliciting statements on cross-examination, that are irrelevant to the record evidence and crimes charged that are, instead, designed to encourage a verdict in disregard of the law.

## MOTION 5

**Defendant should be precluded from presenting evidence of misconduct by others in the industry.**

Defendant should be precluded from presenting evidence and argument that others in the housing services and support industry (however defined) commonly violated HSS's Program or billing requirements or that it is or was a usual practice in the industry. Whether individuals other than Defendant engaged in criminal conduct is irrelevant to the issue of whether Defendant did so. *See United States v. Oldbear*, 568 F.3d 814, 821 (10th Cir. 2009) (finding testimony properly excluded that was "an attempt to establish an 'everybody-is-doing-it defense'" and noting "the fact that others may have been the beneficiaries of improper conduct does nothing to excuse [the defendant]"); *United States v. Thomas*, No. 3:13cr4(JBA), 2013 WL 6073581, at *2 (D. Conn. Nov. 18, 2013) ("[E]vidence that other members of the Tribal Council used their American Express cards for personal expenditures cannot be offered to show [the defendant]'s state of mind regarding the Tribe's policy regarding personal use of these credit cards."); *cf. United States v. Al Fawwaz*, No. S7 98-CR-1023 (LAK), 2015 WL 13484498, at *2 (S.D.N.Y. Feb. 17, 2015) (excluding as irrelevant the "fact that some Saudis do legitimate business in East Africa" because it "would not make it more or less likely that defendant engaged in the charged conduct" and it risks "confusing the issues and inviting the jury to base its verdict on whether defendant acted similarly to other Saudi Arabians"). Evidence of this sort is not relevant, and risks jury confusion and potential nullification.

## MOTION 6

**Defendant should be precluded from blaming Medicaid, the Minnesota Department of Human Services, or associated contractors for allowing the scheme.**

Defendant should be precluded from making any argument that because Medicaid, by and through the Minnesota Department of Human Services (DHS), or associated contractors paid claims for housing services, or failed to detect the scheme, that she could not have known that the scheme was illegal. These kinds of "blame the victim" defenses in a fraud case are irrelevant, improper, and should be excluded.

In the context of criminal fraud, "[a] perpetrator of fraud is no less guilty of fraud because his victim is also guilty of negligence." *United States v. Svete*, 556 F.3d 1157, 1165 (11th Cir. 2009). "If a scheme to defraud has been or is intended to be devised, it makes no difference whether the persons the schemers intended to defraud are gullible or skeptical, dull or bright. These are criminal statutes, not tort concepts." *United States v. Colton*, 231 F.3d 890, 903 (4th Cir. 2000) (quoting *United States v. Brien*, 617 F.2d 299, 311 (1st Cir. 1980)); *see also United States v. Higgins*, No. 22-3538, 2023 WL 6536752, at *3 (6th Cir. Oct. 6, 2023) ("A victim's own gullibility or even negligence is no defense to criminal fraud; instead, as our sister circuits have observed, the focus is on the *defendant's* conduct.").

In recognition of the fact that victims' negligence is irrelevant—as well as prejudicial—courts have taken precautionary measures such as, for example, giving jury instructions, and limiting witness examinations and arguments attempting to excuse criminal conduct on that basis. *See United States v. Thomas*, 377 F.3d 232, 240-44 (2d Cir. 2004) (affirming restrictions on cross-examination of victim; rejecting the defendant's argument that a victim's foolishness vitiated the defendant's fraudulent intent); *United States v. Davis*, 226 F.3d 346, 358-59 (5th Cir. 2000)

(affirming jury instruction that "the naiveté, carelessness, negligence, or stupidity of a victim does not excuse criminal conduct, if any, on the part of a defendant"); *see also United States v. Allen*, 201 F.3d 163, 167 (2d Cir. 2000) ("The victim's negligence in permitting a crime to take place does not excuse the defendant from culpability for her substantive offenses.").

This Court should similarly take steps to prevent Defendant from blaming Medicaid or Minnesota DHS for her ability to victimize it through the alleged fraud scheme. Defendant should be prohibited from arguing to the jury or presenting evidence suggesting that the failure of Medicaid, Minnesota DHS, or its contractors to detect or prevent the scheme is somehow a defense to the charges in the Indictment.

It is no defense for a bank robber to argue that the bank should have had a more effective security system. Nor can a home invader argue that he committed no crime because the homeowners left their front door unlocked. Such contributory negligence theories simply have no place in criminal law, and Defendant should not be permitted to suggest otherwise to the jury.

This prohibition should extend to any suggestion that Medicaid, Minnesota DHS, or its contractors should have discovered the scheme (including, but not limited to, Defendant's alleged overbilling and billing for services not provided), denied claims, or barred Defendant or Cradle from submitting claims for reimbursement, or that the failure of Medicaid, Minnesota DHS, or the contractors to take any of the aforementioned actions led Defendant to believe that the claims were legitimate. Such evidence would be irrelevant, immaterial, prejudicial, confusing to the jury, and is in no way probative of a legitimate defense to the charged fraud scheme.

## MOTION 7

**The Court should preclude any argument that encourages jurors to ignore the law, not follow this Court's instructions, or to otherwise violate their oaths as jurors.**

This Court should preclude Defendant from arguing, or otherwise presenting evidence or pursuing lines of inquiry designed to elicit jury nullification. Examples include evidence on any of the following: the impact of the prosecution on Defendant; any impact the case has had on Defendant's family members; and a possible sentence of confinement or other potential penalties Defendant could face if convicted. Each of these are examples of irrelevant and unfairly prejudicial evidence aimed to encourage verdict notwithstanding the law.

The law is plain that it is improper for a defendant to suggest in any way that the jury should acquit the defendant even if it finds that the government has met its burden of proof. *See, e.g.*, *United States v. Perez*, 86 F.3d 735, 736 (7th Cir. 1996) ("An unreasonable jury verdict, although unreviewable if it is an acquittal, is lawless, and the defendant has no right to invite the jury to act lawlessly. Jury nullification is a fact, because the government cannot appeal an acquittal; it is not a right, either of the jury or of the defendant.") (citing *United States v. Kerley*, 838 F.2d 932, 938 (7th Cir. 1988) and *United States v. Sepulveda*, 15 F.3d 1161, 1190 (1st Cir. 1993)); *see also United States v. Bruce*, 109 F.3d 323, 327 (7th Cir. 1997) ("Jury nullification . . . [is] an 'aberration under our system.'") (quoting *United States v. Anderson*, 716 F.2d 446, 450 (7th Cir. 1983)); *see generally Scarpa v. Dubois*, 38 F.3d 1, 11 (1st Cir. 1994) (noting that "defense counsel may not press arguments for jury nullification in criminal cases"); *Sepulveda*, 15 F.3d at 1190 ("Neither court nor counsel should encourage jurors to exercise [nullification] power. . . . A trial

judge, therefore, may block defense attorneys' attempts to serenade a jury with the siren song of nullification.").

Although the government is unable to anticipate each form of "jury nullification" argument or evidence Defendant may seek to interject into this trial, Defendant may attempt to put the government on trial by introducing evidence and argument concerning the United States' motivation for conducting the criminal investigation and prosecution of this case. *See United States v. Johnson*, 605 F.2d 1025, 1030 (7th Cir. 1979) (affirming the exclusion of evidence offered to show that the "indictment was a political instrument"); *United States v. Berrigan*, 482 F.2d 171, 174-76 (3d Cir. 1973) (affirming exclusion of evidence relating to "discriminatory prosecution"). It is settled law that inquiries regarding the subjective intentions or motivations of a government agent are irrelevant to determining the factual guilt or innocence of a defendant. *See, e.g.*, *United States v. Goulding*, 26 F.3d 656, 667 (7th Cir. 1994) (noting, even in the context of an entrapment defense, it was proper for the trial court not to "allow the defense to mount an inquiry into the mental states of the investigating officers since such an inquiry was irrelevant").

Courts in this District have repeatedly held that "arguments or evidence by [the defendant] encouraging jury nullification lack any relevance or probative value and are contrary to the instructions that [courts] will provide to the jury." *See, e.g.*, *United States v. Mayer*, No. 19-cr-96 (WMW), 2021 WL 2434121, at *5 (D. Minn. June 15, 2021) (granting government's motion in limine to preclude jury nullification argument and evidence). Consistent with this District's treatment of jury nullification, the United States requests that the Court grant its motion seeking to prohibit jury arguments related to jury nullification.

## MOTION 8

### The Court Should Preclude the Use of Law Enforcement Agent Interview Reports or Rough Notes for Impeachment of Government Witnesses.

#### *A. Interview Reports Are Not Statements of the Witness Under the Jencks Act*

Defense counsel may not use interview reports prepared by government agents to cross-examine witnesses that were the subjects of these memoranda, because they are not "statements" made by those witnesses under the Jencks Act. A "statement" is defined within the Jencks Act as either (1) "a written statement made by said witness and signed or otherwise adopted and approved by [the witness]," (2) a recording or transcription that "is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously," or (3) a statement made by a witness to the grand jury. 18 U.S.C. § 3500(e)(1)-(e)(3). The Jencks Act is intended to restrict a defendant's use of discoverable statements to impeachment; accordingly, the Supreme Court has held that Jencks "statements" are limited to those that can "properly be called the witness' own words." *Palermo v. United States*, 360 U.S. 343, 352 (1952). The requirement to produce does *not* extend to summaries of oral statements evidencing "substantial selection of materials," or summaries prepared post-interview that "rest on the memories of the agent," or those that "contain the agent's interpretations of impressions." *Id.* at 352-53. Such documents would not constitute "statements" under the Jencks Act.

Law enforcement agent interview reports or rough notes do not fit the definition of "statements" in the Jencks Act. Rather, they fit into the category specifically excepted by the Supreme Court in *Palermo*. The reports are drafted by law enforcement personnel after the fact, drawing on the agent's memories (in addition to written notes) and both reports and notes reflect the agents' selection of information to include or exclude. They likewise inevitably reflect the thought processes, interpretations, and impressions of the authoring agents. Accordingly, they do

not constitute "statements" under the Jencks Act and provide insufficient basis for impeachment.[1]

Although the government is not required to produce these reports under the Jencks Act, it has nevertheless made a practice of turning the documents over to the defense in advance of trial. This practice should not be taken as a concession by the government that the documents constitute proper impeachment materials. The documents remain outside the realm of impeachment. They have not been adopted by the witnesses, and instead memorialize the statements of the authoring government agents, summarizing the substance of a witness interview through the lens of the agents' own thought processes, interpretations, and impressions. It would be unfair and improper to cross-examine the government's witnesses on the basis of summaries created by another individual, which the witness has never adopted. Accordingly, defense counsel should be precluded from doing so.

In addition to a prohibition on direct impeachment of a witness using interview reports or notes, defense counsel should also be precluded from publishing the contents of interview reports to the jury, holding up the interview report, reading portions of the interview report before the jury in the form of a question posed to the witness, or otherwise suggesting to the jury that the interview report is a statement of the witness. To permit such tactics before the jury would subvert the meaning of the Jencks Act and thwart the Supreme Court's decision in *Palermo*, which held that it would be "grossly unfair" to permit the defense to impeach a witness with a statement "which could not fairly be said to be the witness' own rather than the product of the investigator's selections, interpretations, and interpolations." *Palermo*, 360 U.S. at 350.

[1] Although interview reports *may* be considered Jencks "statements" where a witness has reviewed and adopted that report, *Goldberg v. United States*, 425 U.S. 94, 110 n.19 (1976), no witness in this case has done so, and accordingly the exception is not applicable here.

### *B. Proper Use of the Reports at Trial*

Of course, the defense may properly use the agent interview reports to inform its own questioning of a witness. Defense counsel is free, for example, to ask a witness whether or not he or she made a statement that is reflected in the report. This is distinct from the impermissible use of publishing the report to the jury or introducing the contents of the report as a prior inconsistent statement. *See United States v. Brika*, 416 F.3d 514, 529 (6th Cir. 2005), *abrogated on other grounds by United States v. Booker*, 543 U.S. 222 (2005) (deeming interview reports inadmissible for impeachment on cross-examination); *see also United States v. Leonardi*, 623 F.2d 746, 757 (2d Cir. 1980) (rejecting use of agent's written statement as a prior inconsistent statement); *United States v. Hill*, 526 F.2d 1019, 1026 (10th Cir. 1975) (affirming decision not to allow interview report to impeach witness where witness did not prepare, sign, or adopt it).

## MOTION 9

**The Court should sequester potential witnesses, except for the government's primary agents.**

United States respectfully moves to sequester potential witnesses, except for the government's primary agents and forensic accountants described below, pursuant to Federal Rule of Evidence 615. Rule 615 provides, in relevant part, that "[a]t a party's request, the court must order witnesses excluded so that they cannot hear other witnesses' testimony." However, Rule 615 does not authorize exclusion of (1) a party who is a natural person, (2) an officer or employee of a party which is not a natural person designated as its representative by its attorney, (3) a person whose presence is shown by a party to be essential to the presentation of the party's cause, or (4) a person authorized by statute to be present. Fed. R. Evid. 615(a)–(d). Government agents fall within these exceptions to this rule. *See United States v. Engelmann*, 701 F.3d 874, 877 (8th Cir. 2012); *United States v. Sykes*, 977 F.2d 1242, 1245 (8th Cir. 1992).

The government requests that the Court exempt from its sequestration order the primary case agents and forensic accountants, Internal Revenue Service Special Agent Ryan Ogden, Federal Bureau of Investigation (FBI) Special Agent Jared Kary, and Health and Human Services, Office of Inspector General Special Agent Derrick J. Doty all of whom may testify during trial. These exceptions are permissible under Federal Rule of Evidence 615 and supporting case law. *See, e.g.*, *Engelmann*, 701 F.3d at 877 ("Rule 615 explicitly 'does not authorize excluding . . . an officer or employee of a party that is not a natural person, after being designated as the party's representative by its attorney'" and "'[t]he decision whether to allow the government's agent to testify even though the agent sits at the counsel table throughout the trial is left to the trial court's discretion.'") (quoting *United States v. Sykes*, 977 F.2d 1242, 1245 (8th Cir. 1992)).

## MOTION 10

### Counsel Should Be Precluded from Offering an Advice of Counsel Defense

Counsel have not indicated that they intend to offer an advice-of-counsel defense for Defendant. Should that position change, however, Defendant is nonetheless precluded from seeking an advice-of-counsel defense in this case.

Alleging that one acted on advice of counsel is not a freestanding defense but can be used to negate the mens rea of "willful and unlawful intent." *Williamson v. United States*, 207 U.S. 425, 453 (1908); *see also United States v. Blagojevich*, 794 F.3d 729, 741 (7th Cir. 2015) (citation omitted). In other words, an advice-of-counsel defense can only be pursued if the charged offense is a specific-intent crime or has a scienter requirement of willfulness. *United States v. Powell*, 513 F.2d 1249, 1251 (1975). "To rely upon the advice of counsel in his defense, a defendant must show that he: (i) fully disclosed all material facts to his attorney before seeking advice; and (ii) actually relied on his counsel's advice in the good faith belief that his conduct was legal." *United States v. Rice*, 449 F.3d 887, 897 (8th Cir. 2006); see also Model Crim. Jury Instr. 8th Cir. § 9.09 (2021).

Defendant has not presented any evidence supporting an advice-of-counsel defense, let alone met her burden of proof. Absent such a showing, she is not entitled to assert any advice-of-counsel defense at trial.

Dated: August 19, 2026

Respectfully submitted,

DANIEL N. ROSEN
United States Attorney
District of Minnesota

LORINDA LARYEA
Chief, White Collar and Corporate Enforcement
Criminal Division
U.S. Department of Justice

By: */s/ Jody King*
Jody King
Trial Attorney
Ohio Bar No. 94125
United States Department of Justice
1400 New York Avenue NW
Washington, DC 20005
202-262-7656
Jody.King@usdoj.gov

By: */s/ Emily Reeder-Ricchetti*
Emily Reeder-Ricchetti
Trial Attorney
DC Bar No. 252710
United States Department of Justice
1400 New York Avenue NW
Washington, DC 20005
202-355-5633
Emily.Reeder-Ricchetti@usdoj.gov

By: */s/ Brant Cook*
Brant Cook
Trial Attorney
MI Bar No. P86489
United States Department of Justice
211 West 4th Street
Suite 2001
Detroit, MI 48226
Phone: (202) 748-1224
E-mail: brant.cook@usdoj.gov