UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 26-cr-90 (SRN/ECW)

UNITED STATES OF AMERICA,

Plaintiff,

v.

SHARMAINE MEADOWS,

Defendant.

---

ADDENDUM TO NOTICE OF INTENTION TO OFFER "INEXTRICABLY INTERTWINED" AND "OTHER ACT" EVIDENCE

On September 4, 2026, the United States filed a Notice of Intention to Offer "Inextricably Intertwined" and "Other Act" Evidence. (ECF No. 48)(the "Notice"). Following discussion of the Notice at the final pretrial conference on September 11, 2026, the Court directed the government to provide more specific information concerning the evidence it seeks to admit.

## I. The Superseding Indictment

The Superseding Indictment alleges that the Defendant engaged in a scheme to defraud the Housing Stabilization Services ("HSS") Program, a Medicaid program administered by the Minnesota Department of Human Services. (Superseding Indictment, ECF No. 42, ¶¶ 6, 7, 16). The Superseding Indictment

alleges that the scheme involved the Defendant unlawfully enriching herself by, among other things: (a) submitting and causing the submission of false and fraudulent claims to the HSS Program (i) that inflated the number of hours of service actually provided, (ii) for services that were not actually provided, and (iii) for services that were not eligible for reimbursement; (b) concealing the submission of false and fraudulent claims to the HSS Program and the receipt and transfer of proceeds of the fraud; and (c) diverting proceeds of the fraud for the personal use and benefit of the Defendant and others, and to further the fraud scheme. (Id. ¶ 17). As part of the scheme, the Superseding Indictment then charges five specific instances of false and fraudulent claims. (Id. ¶¶ 19 and 20).

## II. Evidence Sought to Be Admitted

As noted in its September 4, 2026, Notice, the government seeks to admit i) evidence of potential fraud in another program area tending to show the Defendant's knowledge of, and reaction to, claims billed to Minnesota Medicaid from hours believed to have been fraudulently marked by front-line employees; and ii) evidence from financial accounts controlled by the Defendant that received intermingled payments from the multiple Medicaid-funded programs in which her company did work, including the HSS Program. Both classes of evidence are inextricably intertwined with the scheme to defraud alleged in the Superseding Indictment. Alternatively, this evidence is admissible under Fed. R. Evid 404(b) as relevant to

establish motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident

### A. Evidence Relating to Potential Fraud in the Individualized Home Supports Program

As further discussed below, the evidence relating to fraud in the Individualized Home Supports ("IHS") Program overlaps and is intertwined with the scheme to defraud the HSS Program because it relates i) to a beneficiary who was at the same time receiving HSS Program services from the same Cradle of Love ("Cradle") front-line employee, and ii) the front-line employee engaged in the fraud, Kinyatta Henry, was kept on with full knowledge of the Defendant, and continued to work on the HSS Program. Moreover, even if this evidence is deemed "extrinsic," it also directly implicates Rule 404(b), in that it tends to show that the similar conduct underlying Counts 4 and 5 of the Superseding Indictment – keeping Medicaid money from known fraud – was not the result of mistake or accident.

#### i. Counts 4 and 5

Counts 4 and 5 of the Superseding Indictment charge the Defendant with violations of 18 U.S.C. §§ 1347 and 2, relating to two HSS Program claims submitted in October 2022 for services purportedly provided to the Medicaid beneficiary designated with the initials "M.F." (Id. ¶ 20).

The government anticipates that M.F. will testify that she was connected with Cradle by her coordinating county case worker in approximately 2021. M.F. was

seeking HSS services. M.F. will testify that she never met anyone in-person, with all interactions over the phone. M.F. will testify that she had at least three different Cradle case workers, and that they contacted her only about once a month by phone. Ultimately, after more than a year, Cradle did not find M.F. a home, and she began working with a different company that quickly found her a new, suitable home. The government anticipates showing at trial that between January 2021 and June 2023, Cradle billed the HSS Program more than 440 hours, totaling more than $30,000, for purported work done on behalf of M.F.

Among the many claims made by Cradle relating to M.F. were claims made on October 19 and 26, 2022, which are charged as Counts 4 and 5 in the Superseding Indictment. The government will show that Cradle, including the Defendant, was aware that a Cradle caseworker, Kaleb Dowd, had falsely claimed to have worked HSS hours for M.F. and two other HSS beneficiaries. The government anticipates testimony from former Cradle employee Jovaughn Okunowo concerning a series of events and a November 2, 2022, email that was also sent to the Defendant – Govt. Ex. 326 – confronting Dowd about these falsehoods and suspending his employment. The government will show through records that, while Dowd's pay was docked for the false hours, the billing to the HSS Program that had occurred relating to M.F. and the other flagged beneficiaries was not reversed, and was paid into the Cradle bank account for which the Defendant was the sole signatory.

### ii. Fraud in the IHS Program, and Overlap with the HSS Program

Cradle was involved in providing services to Medicaid beneficiaries through multiple programs administered by Minnesota DHS. These programs included the HSS Program that is the subject of the Superseding Indictment, as well as the IHS Program. Some of the beneficiaries of the HSS Program purportedly receiving services from Cradle were also receiving purported IHS services from Cradle.

The government anticipates showing that among the overlapping beneficiaries of both IHS and HSS services in the fall of 2022 was a beneficiary with the initials O.S. During this time period, O.S. was assigned to the Cradle caseworker Kinyatta Henry for services under both programs. The government anticipates testimony from Okunowo concerning an investigation into Henry's claimed hours under the IHS Program in October through December 2022, and a resulting string of emails explicitly telling the Defendant that Henry had falsified those hours and recommending to the Defendant that Henry be fired (Govt. Ex. 327). The Defendant initially concurred. (Id.). Like with the series of events relating to Counts 4 and 5, above, the government will show that, while Henry's pay was docked for the believed-to-be-fraudulent hours, the claims to the IHS program relating to those hours were not withdrawn, and the Defendant received payment into her account. The government also anticipates showing that the HSS Program hours also claimed

by Henry in this same time period for O.S. were nevertheless billed to Medicaid, and were paid to the Defendant.

The government further anticipates showing that Henry was not fired. The government anticipates testimony from Okunowo, and a follow up email to the Defendant and others on December 27, 2022, that Henry could not be fired due to how heavy her caseload of hours worked was. (Govt. Ex. 328). The government anticipates showing that, despite ongoing concerns of Henry's dishonest reporting of hours, she continued to work for Cradle, and continued to have the HSS hours she purportedly worked claimed to, and paid by, Minnesota Medicaid, supporting the scheme alleged in the Superseding Indictment. This includes more than 50 days of claims for greater than 20 hours of work each day. (Govt. Ex. 19).

**B. Evidence Relating to Payments to the Defendant and Financial Accounts**

As noted, Cradle was involved in providing services to Medicaid beneficiaries through multiple programs administered by Minnesota DHS. Because Cradle was involved in providing services under, and submitting claims to, Minnesota DHS for multiple programs at the same time, payments from Minnesota DHS and Medicaid MCOs for the different program areas were often aggregated when paid to Cradle in single payments (for example, a single payment by Minnesota DHS could include reimbursement for both IHS and HSS claims). These payments were made by electronic funds transfer or by checks, which were deposited in Cradle bank

accounts, for which the Defendant was the sole signatory. The government anticipates that a DHS witness will testify generally as to claims processing for the Medicaid programs and the intermingling of payments from multiple programs, and that an FBI Forensic Accountant will testify concerning the movement and disbursement of the Medicaid funds.

As discussed in the government's Notice filed on September 14, 2026, these intermingled payments made to the Defendant, into accounts she controlled and that held the funds paid to the Defendant for the various Medicaid-funded programs, are inextricably intertwined. Moreover, the receipt and use of this money is admissible as evidence of motive.

**III. Applicable Law**

Under Eighth Circuit precedent, intrinsic evidence, which is not governed by Rule 404(b), is evidence of wrongful conduct that "is offered for the purpose of providing the context in which the charged crime occurred." *United States v. Johnson*, 463 F.3d 803, 808 (8th Cir. 2006). It "includes both evidence that is inextricably intertwined with the crime charged as well as evidence that merely 'completes the story' or provides context to the charged crime." *United States v. Guzman*, 926 F.3d 991, 1000 (8th Cir. 2019) (internal quotation marks and citation omitted). Unlike extrinsic evidence admitted under Rule 404(b), pertaining to distinct prior acts, intrinsic evidence relates to crimes that are "so blended or

connected with the one[s] on trial" that "proof of one incidentally involve[s] the other[s]." *United States v. Luna*, 94 F.3d 1156, 1162 (8th Cir. 1996) (alterations in original) (internal quotation marks omitted).

Regarding Rule 404(b), generally, evidence of prior acts are not admissible to prove a person's character. *United States v. Brunsting,* -- F.4th --, 2026 WL 2238673, at *10 (8th Cir. Aug. 4, 2026); *see* Fed. R. Evid. 404(b). However, Rule 404(b) does permit the admission of evidence of the defendant's other acts if the evidence is relevant to establish motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. *Id.* Evidence of other acts are admissible under Rule 404(b) where "(i) relevant to a material issue; (ii) proved by a preponderance of the evidence; (iii) higher in probative value than in prejudicial effect; and (iv) similar in kind and close in time to the crime charged." *Id.* (citing to *United States v. Franklin*, 250 F.3d 653, 658 (8th Cir. 2001)).

**A. Evidence Regarding Cradle's Overlapping Work in the IHS and HSS Programs is Admissible as Intrinsic and Inextricably Intertwined Background.**

The witnesses' anticipated testimony, contemporaneous communications, and billing and claims data, will establish Cradle's overlapping operation in the multiple program areas in which it worked. As noted above, this overlap extended across Cradle employees, program beneficiaries, and reimbursements. As such, the evidence is admissible as background, *res gestae*, evidence that is inextricably

intertwined with evidence of the Defendant's conduct, as alleged in the Superseding Indictment. And the proffered evidence would be probative to prove knowledge and intent, which are elements of the crimes charged in the Superseding Indictment.

Further, the anticipated testimony and documentary evidence about purported fraud by Cradle employee Kinyatta Henry in the IHS Program, while working with a beneficiary serviced by both the IHS and HSS Programs in the same time period, overlaps with the charged scheme to defraud. It further demonstrates how CRADLE reviewed the claimed hours of its employees across all program fields, alerted the Defendant to problems, and then did not extend any suspicions of fraud to withholding billing to Medicaid.

Moreover, after these events, Henry continued to work for Cradle, and continued to submit hours under the HSS Program that were then billed by Cradle to Medicaid, during the time period of the scheme alleged in the Superseding Indictment. As noted above, there were dozens of instances of hours purportedly worked by Henry exceeding 20 hours a day submitted for payment through the HSS Program. The Superseding Indictment alleges a scheme to defraud that occurred between August 2020 and October 2025 (Superseding Indictment, ¶ 16), and that included the submission of claims to Medicaid for the HSS Program that were not provided and/or were temporally impossible (Id. ¶18f). Thus, the proffered evidence, which shows that the Defendant was put on notice of fraud within Henry's hours, is

also evidence of the broader scheme to defraud the HSS Program alleged in the Superseding Indictment, and is admissible to prove the scheme of which the specifically charged Counts are single instances. A scheme is an element of a § 1347 offense and not every instance of a scheme must be charged in order to be relevant to proving the existence and boundaries of the scheme *See United States v. Bajoghili*, 785 F.3d 957, 962-963 (4th Cir. 2015).

**B. Evidence Regarding Purported Fraud in the IHS Program is Also Admissible under Fed. R. Evid. 404(b).**

Alternatively, the anticipated testimony and documents regarding Henry's claiming purportedly fraudulent hours of IHS Program work for which Cradle nevertheless was paid is admissible for a permitted purpose under Fed. R. Evid. 404(b) as evidence of the Defendant's intent, knowledge, and absence of mistake, regarding these and other payments relating to the HSS Program. The evidence meets each of the requirements for admission of evidence under the Rule.

First, the other acts are relevant to a material issue: Defendant's awareness of purportedly fraudulent hours claimed by front-line employees and her subsequent actions. The evidence of the Defendant's reaction to learning of the purported fraud, to include taking in and keeping the Medicaid dollars for the purportedly fraudulent hours, shows both her knowledge of potential fraud, and that she nevertheless accepted the benefit thereof.

Second, the "other acts"—if so determined by the Court—will be proved by a preponderance of the evidence. Concerning Henry's purportedly fraudulent hours, with respect to the Defendant, the "other acts" that the government will prove are that a) the Defendant was made aware of the suspicions of fraud, b) theses suspicions were sufficient to merit initially approving firing Henry and withholding her pay for those hours, and c) that Medicaid dollars were nevertheless accepted and kept by the Defendant for those hours.

Third, this series of events is exceptionally probative. As noted above, the government will show Meadows was made aware of fraudulently reported front-line employee hours concerning the HSS Program and similarly profited. The evidence regarding Henry's purported work in the IHS Program–with a beneficiary whom Henry also serviced through the HSS Program during the same period–shows an absence of mistake and lack of accident with respect to flagged HSS Program hours, and knowledge of potential fraud in the overlapping programs.

Accordingly, should this Court determine that the anticipated testimony and other evidence regarding Cradle's work in overlapping Medicaid-funded program fields, and/or the fraudulent work by Henry in the IHS Program, does not constitute intrinsic evidence, this evidence does constitute admissible prior acts evidence demonstrating absence of mistake, lack of accident, and knowledge under Fed. R. Evid. 404(b).

Respectfully submitted,

DANIEL N. ROSEN
United States Attorney
District of Minnesota

*s/Brant Cook*

BRANT COOK
Trial Attorney
United States Department of Justice
National Fraud Enforcement Division
211 W. Fort St., Suite 2001
Detroit, Michigan 48226
(202) 748-1224
Brant.cook@usdoj.gov