**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

**CASE NO. 26-CR-90 (SRN/ECW)**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>v.<br><br>SHARMAINE MEADOWS<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | UNITED STATES'S SUPPLEMENTAL TRIAL BRIEF |

The United States respectfully submits this supplemental trial brief pursuant to the Court's request at the September 11, 2026 final pretrial conference. This supplemental brief has two sections. In Section I, the United States summarizes the scheme alleged by the Superseding Indictment and addresses why this scheme evidence is relevant and admissible, even though no conspiracy was charged, and why it does not open the door to other "good acts" evidence. *See also* ECF No. 38. In Section II, the United States provides supplemental authority regarding Federal Rule of Evidence 801(d)(2)(E), commonly referred to as the co-conspirator exception, and why this rule is applicable even though a scheme, and not a conspiracy, was alleged in the Superseding Indictment. The United States also provides an overview of the scheme alleged and the co-schemer statements which it expects to introduce at trial.

## I. <u>The Government Appropriately Intends to Present Evidence of the Defendant's Participation in a Health Care Fraud Scheme</u>

Defendant Sharmaine Meadows is charged with executing, or attempting to execute, "a scheme and artifice to defraud a health care benefit program affecting commerce, that is Medicaid." ECF No. 42. Specifically, the Superseding Indictment charges five executions of that scheme, through claims submitted to defraud the Housing Stabilization Services ("HSS") Program,

a Medicaid program administered by the Minnesota Department of Human Services. *Id.* The Superseding Indictment alleges that the scheme involved the Defendant unlawfully enriching herself by, among other things: (a) submitting and causing the repeated submission of false and fraudulent claims to the HSS Program (i) that inflated the number of hours of service actually provided, (ii) for services that were not actually provided, and (iii) for services that were not eligible for reimbursement; (b) concealing the submission of false and fraudulent claims to the HSS Program and the receipt and transfer of proceeds of the fraud; and (c) diverting proceeds of the fraud for the personal use and benefit of the defendant and others, and to further the fraud scheme. *Id*. at ¶ 17. While five discrete claims submitted to Medicaid are charged, *id.* at ¶ 20, the Superseding Indictment is clear that these claims are presented as discrete executions in furtherance of the broader scheme. *E.g., id. at* ¶ 18 (describing the manner and means of the scheme and alleging that from August 2020 through around October 2025, Defendant, through her company Cradle of Love ("Cradle"), received approximately $3.7 million based on "false and fraudulent claims") and ¶ 20 (identifying five specific claims in 2022 and 2023).

During the September 11, 2026 pretrial conference, the United States understood the Court to suggest (i) that the United States should limit its case to presenting evidence of the five executions, rather than the entirety of the charged scheme, and (ii) that presentation of scheme evidence would open the door to otherwise impermissible "good acts" evidence from the Defendant. The law is clear that this would be an inappropriate limitation of the government's right to put on evidence in support of its well-pleaded allegations in the Superseding Indictment.

To start, under 18 U.S.C. § 1347, it is a federal crime to "knowingly and willfully execut[e], or attempt[] to execute, a scheme or artifice- (1) to defraud any health care benefit program; or (2) to obtain, by means of false or fraudulent pretenses, representations, or promises, any of the money

or property owned by, or under the custody or control of, any health care benefit program, in connection with the delivery or payment for health care benefits, items, or services." To be clear, the statute requires charging executions of the scheme (this is distinct from wire fraud, for example, which criminalizes acts in furtherance of a scheme). The statute further does not require charging a conspiracy to present evidence of the broader scheme. In fact, establishing the scheme is an element of the offense that must be proven.

While the Eighth Circuit has not yet had the opportunity to address a Court's inappropriate restriction of government's presentation of scheme evidence in a health care fraud case, other Circuits have. In *United States v. Bajoghli*, the Fourth Circuit addressed this exact issue, holding "when the government charges a defendant under § 1347 with a scheme to defraud and elects to charge only some of the executions of that scheme, *its election does not limit its proof to only the charged executions*. *It may introduce other evidence of uncharged executions to prove the scheme*." 785 F.3d 957, 963 (4th Cir. 2015) (emphasis added). In that case, the district court made a pretrial ruling that "evidence at trial must relate to one of the specifically charged executions of the fraudulent scheme and that 'evidence of an uncharged fraudulent scheme should not be admitted.'" *Id*. at 962. On interlocutory review the Fourth Circuit held "the district court abused its discretion in failing to give the government sufficient latitude to carry its burden of proof." *Id*. at 964. The *Bajoghli* court cites cases from several other circuits in reaching its conclusion. *Id*. at 963.

As noted, not only is a court's restriction of scheme evidence an abuse of discretion, the evidence is inherently intrinsic to the scheme. In evaluating the admissibility of scheme evidence beyond the charged counts, the *Bajoghli* court held "it follows that because evidence of conduct not charged in a specific execution may be relevant to the nature and scope of a scheme charged

under § 1347, such evidence is intrinsic to the 'scheme' element, and Rule 404(b) therefore does not, as Bajoghli argues, regulate it as 'other bad acts' evidence." *Id.* at 964.

This understanding of permissible evidence is not controversial, as has been noted by other courts within the Eighth Circuit. For example, in *United States v. Boesen*, a court in the Southern District of Iowa recognized "[t]he law does not require the Government to charge a defendant with every execution of a health care fraud scheme, and the Government could indict a defendant for a health care fraud scheme by charging only one execution of that scheme." 473 F.Supp.2d 932, 952-53 (S.D. Iowa 2007) (citing *United States v. Kirkham*, 129 F. Appx. 61, 68 (5th Cir. 2005) ("[A]lthough the government may charge defendants for each execution of the scheme, it is not required to do so.")); *United States v. Hickman*, 331 F.3d 439, 446 (5th Cir. 2003) ("[A]lthough the crime of health care fraud is complete upon the execution of a scheme, any scheme can be executed a number of times, and each execution may be charged as a separate count.").

During the September 11, 2026 hearing, the government also understood the Court to suggest that should the United States introduce expressly relevant scheme evidence, that would open the door to Defendant's introduction of inadmissible "good acts" evidence. This, too, is incorrect. As the Sixth Circuit noted in *United States v. Hamaed*, evidence of specific instances of good conduct does not rebut evidence of a fraudulent scheme, and is therefore both irrelevant and improper propensity evidence. 178 F.4th 281 (6th Cir. 2026). In *Hamaed*, the defendant pharmacist was charged with conspiracy to commit health care fraud and sought to introduce specific instances of his legitimate billing practices. *Id.* at 289-90, 295. The district court excluded this evidence, and the Sixth Circuit affirmed, because the government did not allege that every prescription the defendant billed was fraudulent. *Id.* at 295–96. Thus, "it was no defense" that the defendant legitimately billed some prescriptions. *Id*; *see also United States v. Ifediba*, 46 F.4th 1225, 1233,

1238 (11th Cir. 2022); *United States v. Dimora*, 750 F.3d 619, 630 (6th Cir. 2014); *United States v. Ellisor*, 522 F.3d 1255, 1270 (11th Cir. 2008); *United States v. Marrero*, 904 F.2d 251, 260 (5th Cir. 1990); *United States v. Scarpa,* 897 F.2d 63, 70 (2d Cir. 1990); *United States v. Heidecke*, 900 F.2d 1155 (7th Cir. 1990). The United States should not be punished for introducing probative evidence, by having to endure inadmissible evidence.

Taken together, the Court should not impermissibly limit the government's evidence of a scheme as charged in the Superseding Indictment to the five charged executions, nor should it permit impermissible "good acts" evidence suggested by the defendant.

## II. Statements Made by Co-Participants in this Scheme are Admissible

At the September 11, 2026, conference, the Court requested authority as to the application of Rule 801(d)(2)(E) when a criminal conspiracy is not alleged or charged, and for more information from the United States as to the scheme and nature and types of statements which it expects to introduce under Rule 801(d)(2)(E). In short, the law permits the application of Rule 801(d)(2)(E) when conspiracy is *not* charged, and foundation is sufficient for its application here.

### A. "Conspirator Statements" in Rule 801(d)(2)(E) Includes Statements by Co-Participants in a Joint Venture or Scheme

Federal Rule of Evidence 801(d)(2)(E) provides that a statement is not hearsay if that statement is offered against a party and is a statement by a co-conspirator of a party during the course and in furtherance on the conspiracy. Notably, the Advisory Committee Notes to Rule 801(d)(2)(E) further state that "[w]hile the rule refers to a coconspirator, it is this committee's understanding that the rule is meant to carry forward the universally accepted doctrine that a joint venturer is considered as a coconspirator for the purpose of this rule even though no conspiracy has been charged." Fed. R. Evid. 801, Notes of Committee on the Judiciary, Senate Report No. 93-1277 (citing *United States v. Spencer*, 415 F.2d 1301, 1304 (7th Cir. 1969)).

In this context of Rule 801(d)(2)(E), the Eighth Circuit observed in *United States v. Bell* that an out-of-court statement is not hearsay if the "district court is satisfied that it is more likely than not that the statement was made during the course and in furtherance of an *illegal association* to which the declarant and the defendant were parties." 573 F.2d 1040, 1044 (8th Cir. 1978) (emphasis added). Subsequent rulings have made even clearer that Rule 801(d)(2)(E)'s use of the term "conspiracy" is "distinct from the substantive law concept." *United States v. Miller*¸644 F.2d 1241, 1244 at n.5 (8th Cir. 1981), *cert. denied*, 454 U.S. 850 (1981). "Thus, it is well established that the crime of conspiracy need not be charged in order to invoke the conspirator exception. *The rule may more properly be thought of a 'joint venture' or 'concert of action' exception*." *Id.* (emphasis added); *see also United States v. Tremusini*, 688 F.3d 547, 551-55 (8th Cir. 2012) (finding district court's admission of statements pursuant to Rule 801(d)(2)(E) proper in case alleging various mail fraud schemes); *United States v. Roach*, 28 F.3d 729, 737 (8th Cir. 1994) ("As a general rule, statements made by a co-conspirator in furtherance of the unlawful association . . . are properly admissible against all conspirators, whether or not a conspiracy is actually charged.") (quoting *United States v. Frol*, 518 F.2d 1134, 1136 (8th Cir. 1975)). "Conspiracy" as used in Rule 801(d)(2)(E) is interpreted similarly broadly by courts across the country to reach joint ventures and schemes. *See, e.g.*, *United States v. Washington*, 434 F.3d 7, 13 (1st Cir. 2006) (citing cases); *United States v. Kelley*, 864 F.2d 569, 573 (7th Cir. 1989) ("[W]e initially note that Rule 801(d)(2)(E) applies not only to conspiracies but also to joint ventures, and that a charge of conspiracy is not required to invoke the evidentiary rule."); *United States v. Swainson*, 548 F.2d 657, 661-62 (6th Cir. 1977), *cert. denied*, 431 U.S. 937 (1977) ("[I]t is established that even where a conspiracy is not charged, declarations of partners in a criminal joint venture are admissible to prove the guilt of another partner.") (citations omitted); *United States v. Trowery*, 542 F.2d 623,

626-27 (3rd Cir. 1976) ("To determine whether the evidence is competent as against the nondeclarant [under Rule801(d)(2)(E)], the trial judge determines whether it has been proved, by a preponderance of the evidence, that a joint undertaking existed at the time of the statement or action."); *United States v. Garza*, 2024 WL 4216952, at *13 (E.D. Ca. Sept. 17, 2024) (noting that Rule 801(d)(2)(E) applies more broadly than a criminal conspiracy, including to a "joint venture"); *United States v. Shah*, No. 19 CR 864, 2023 WL 22140, at *1-*3 (N.D. Ill. Jan. 3, 2023) (applying Rule 801(d)(2)(E) to statements of participants in an unlawful joint venture); *United States v. Ferris*, Case No. CR-18-159-D, 2019 WL 3935102, at *2 (W.D. Ok. Aug. 20, 2019) (finding statements admissible under Rule 801(d)(2)(E) because defendants were "members of a joint enterprise" and the statements "fall within the categories of statements that would generally be considered in furtherance of that enterprise.").

In short, there is ample authority establishing that as used in Rule 801 (d)(2)(E), the term "conspiracy" encompasses any joint venture or concert of action, including a health care fraud scheme. Accordingly, statements are admissible under Rule 801(d)(2)(E) where it is established by a preponderance of the evidence (1) that a joint venture or scheme existed; (2) that the Defendant and the declarant were participants in the joint venture or scheme; and (3) that the statement was in furtherance of the joint venture or scheme. As briefly set forth below, the United States will satisfy all three elements here.

**B. The Government Will Establish a Scheme and that Certain Statements Were in Furtherance of the Scheme**

The Superseding Indictment alleges a scheme by which Defendant, working with others, systematically submitted HSS claims that either significantly overstated or wholesale invented purported housing services provided to Medicaid beneficiaries. ECF No. 42. To generate these false claims, Meadows and others in Cradle management (discussed further below) directed Cradle

employees to "maximize" billable hours for each Medicaid beneficiary who had agreed to receive HSS Program services from Cradle. As will be explained through witness testimony at trial, Cradle "maximized" hours by taking the HSS Program's annual allotted service hour cap of 150 transition or sustaining service hours and dividing the 150 hours across the weeks of the year, usually in two, three, or five hour increments, despite often not actually providing those hours of service to Medicaid recipients. Cradle beneficiary-facing employees were pressured to "maximize" those allotted hours—that is, bill for each client's pre-determined hours of service each week.

The anticipated former-employee testimony regarding the scheme is supported by internal communications sent by, or involving, the Defendant (*e.g.*, Govt. Exs. 306, 315, 318, 319, 320, 329) and a voluntary statement made by the Defendant to law enforcement during which she described her awareness of and involvement in Cradle's billing and that she instructed Cradle employees to service clients at a set amount of hours per week (approximately 4 to 5 hours). Former Cradle employees are also anticipated to describe regular meetings at which Cradle management reviewed employees' time, and other meetings where Cradle Chief Financial Officer Tony Davis, supervised by the Defendant, pressured beneficiary-facing employees to "maximize" available hours, and questioned them if they had not used all of the weekly hours. Testimony will further establish that Defendant often attended these meetings.

Evidence of a fraudulent joint venture will establish the foundation necessary for the introduction of these statements under 801(d)(2)(E). Medicaid claims data and summaries of claims data will show rote and repeated billing of the same amount of hours week after week for a given Medicaid beneficiary, regardless of actual hours of service provided. Exhibits will include both the raw HSS claims data (Govt. Ex. 100) as well as summaries created from Cradle's HSS claims data which simplify the thousands of lines of data and show overall trends (*e.g.*, Govt. Ex.

002). This evidence will also show distinctive and unmistakable billing patterns for several of the charged claim beneficiaries, wherein the same amount of hours were charged week-after-week even as—based on anticipated beneficiary testimony—the beneficiaries received little, if any, services from Cradle employees. *E.g.*, Govt. Exs. 003, 006, 008, and 009. Summaries of, and comparisons of claims data to, internal Cradle records describing the purported services provided will further underscore that claims were billed with no regard as to whether they accurately and truthfully described the services rendered. *E.g.*, Govt. Exs. 008-019. The United States further anticipates witness testimony that a Cradle employee repeatedly raised concerns to Defendant about rote hours and employees' suspected falsification of time entries and even flagged false entries, but that these and other false and fraudulent claims continued to be billed to Medicaid.

Given this scheme and Defendant's involvement, the United States intends to offer certain out-of-court written and verbal statements by co-participants in the scheme: Tony Davis (Cradle's Chief Financial Officer) and Latrice Osborne Ushie (one of Cradle's former billers). These statements generally fall into three categories:

(1) instructions by Mr. Davis, consistent with Defendant's instructions, to Cradle employees to "maximize" their hours (*e.g.*, anticipated witness testimony and Govt. Exs. 343 & 500);

(2) instructions by Mr. Davis and Ms. Ushie to LaToya Phillips Hilton as to how she should bill Medicaid, including Cradle's HSS claims (*e.g.*, anticipated witness testimony and Govt. Exs. 324 & 325); and

(3) statements by Mr. Davis to Jovaughn Okunowo regarding how the Defendant may react to Okunowo firing Kinyatta Henry, a front-line Cradle employee suspected by Ms. Okunowo to have falsified hours.

As an initial matter, all of the above-noted statements are independently admissible regardless of Rule 801(d)(2)(E) if not offered for their truth, but rather the effect on the listener and that listener's subsequent action. For example, statements made by Mr. Davis to Cradle employees to "maximize" hours are directives, and thus not assertions of fact precluded by the hearsay rule. *E.g.*, *Katzenmeier v. Blackpowder Prods., Inc.,* 628 F.3d 948, 951 (8th Cir. 2010). Witness testimony is also expected that the Defendant was often present when Mr. Davis provided these directives. Further, anticipated testimony by Ms. Hilton regarding instructions given to her by Mr. Davis and Ms. Ushie regarding how Cradle billed Medicaid will be offered to show the effect on Ms. Hilton—that is, that it caused her to bill Cradle's HSS claims in a certain way. *See United States v. Wright*, 739 F.3d 1160, 1171 (8th Cir. 2014) (citing cases).

However, these statements by Mr. Davis and Ms. Ushie should also be admitted for their truth as they are precisely the kinds of statements admissible under Rule 801(d)(2)(E). The evidence will establish that these statements were made while Cradle was actively engaged in submitting HSS claims based on rote and regular up-charging of actual service hours or wholly invented service hours. The statements were in furtherance of the scheme in that they were pressuring or instructing beneficiary-facing employees to claim more hours, discussing the process used to submit false and fraudulent claims to Medicaid, or otherwise intended to support continued submission of such claims. Accordingly, they are admissible pursuant to Rule 801(d)(2)(E).

**<u>CONCLUSION</u>**

For the reasons stated above, evidence regarding the broader scheme alleged by the Superseding Indictment is relevant and admissible in this case, and does not open the door to "good acts' evidence. Further, out of court statements by Defendant's co-schemers may be properly admitted under Rule 801(d)(2)(E), as they were made during and in furtherance of the health care fraud scheme.

Respectfully submitted,

DANIEL N. ROSEN
United States Attorney
District of Minnesota

*/s/ Emily Reeder-Ricchetti*
Emily Reeder-Ricchetti
Trial Attorney
DC Bar No. 252710
United States Department of Justice
National Fraud Enforcement Division
1400 New York Avenue NW
Washington, DC 20005
202-355-5633
Emily.Reeder-Ricchetti@usdoj.gov