UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA

Plaintiff,

v.

SHARMAINE MEADOWS,

Defendant.

No. 26-cr-90 (SRN/ECW)

**DEFENDANT'S RENEWED MOTION FOR JUDGMENT OF ACQUITTAL**

Defendant Sharmaine Meadows, by and through her attorneys, respectfully renews her motion for judgment of acquittal under Federal Rule of Criminal Procedure 29(c). Ms. Meadows moved for a judgment of acquittal at the close of the government's case-in-chief. Defendant's motion was denied. On October 7, 2026, the jury acquitted Ms. Meadows on Counts 1 and 3 and returned guilty verdicts on Counts 2, 4, and 5. Ms. Meadows now renews her motion as to the three counts of conviction.

Each count charges a single, discrete "execution" of the alleged health care fraud scheme - one dated Medicaid claim submitted on behalf of one Medicaid recipient. Count 2 rests on a single $343.40 claim concerning recipient S.R.; Counts 4 and 5 rest on two $412.08 claims concerning recipient M.F. To sustain a conviction on any of these counts, the government was required to prove - as to that specific execution - that Ms. Meadows knowingly and willfully executed a scheme to defraud, with the intent to defraud. Viewing the trial record as a whole, the government's proof on the knowledge-and-intent element as to each charged execution does not clear even the deferential Rule 29 bar. The evidence established, at most, a general billing practice; it did not establish that the particular claims underlying Counts 2, 4, and 5 were false

and were submitted by Ms. Meadows with fraudulent intent. The Court should enter judgments of acquittal on Counts 2, 4, and 5.

## PROCEDURAL BACKGROUND

The Superseding Indictment charges Ms. Meadows with five counts of health care fraud, in violation of 18 U.S.C. §§ 1347 and 2. Each count alleges one execution of a single alleged scheme to defraud the Minnesota Medicaid Housing Stabilization Services ("HSS") Program through Ms. Meadows's company, Cradle of Love, LLC. The five counts correspond to five individual claims, as follows: Count 1 (recipient A.T., July 22, 2022); Count 2 (recipient S.R., October 24, 2023); Count 3 (recipient P.D., November 28, 2023); Count 4 (recipient M.F., October 19, 2022); and Count 5 (recipient M.F., October 26, 2022). The Court's final instructions and verdict form identify each recipient by initials, and this motion uses the same designations.

Trial commenced on September 28, 2026. At the close of the government's case-in-chief, Ms. Meadows moved for a judgment of acquittal; the parties and the Court agreed the motion would be argued after the government rested. On October 7, 2026, the jury returned its verdict: not guilty on Count 1, guilty on Count 2, not guilty on Count 3, guilty on Count 4, and guilty on Count 5.

This renewed motion is timely under Rule 29(c)(1), which permits a defendant to renew a motion for judgment of acquittal within 14 days after a guilty verdict. Because the motion is renewed after verdict, the Court may consider the entire trial record in deciding it.

## LEGAL STANDARD

A court must enter a judgment of acquittal on any count for which the evidence is insufficient to sustain a conviction. On a renewed post-verdict motion, the court considers the entire trial record. In reviewing the sufficiency of the evidence, the court views the evidence in the light most favorable to the verdict, resolves evidentiary conflicts in the government's favor, and accepts all reasonable inferences that support the verdict. *United States v. Golding*, 972 F.3d 1002 (8th Cir. 2020). The conviction stands unless no reasonable jury could have found the defendant guilty beyond a reasonable doubt. *Id*. The standard is "very strict," and a jury's verdict should not be overturned lightly. *United States v. Boesen*, 491 F.3d 852 (8th Cir. 2007).

Ms. Meadows does not understate that standard. But it is not without content. The court's role on a sufficiency review is to determine whether the government presented evidence on each element adequate to support the verdict. *Boesen*, 491 F.3d 852 (8th Cir. 2007). The government receives the benefit of reasonable inferences only "so long as they are not conjecture and speculation"; "conjecture is something less than an inference reasonably drawn from the evidence," and "speculation does not weigh against the defendant." *Id*. A judgment of acquittal is warranted where "there is no interpretation of the evidence that would allow a reasonable jury to find the defendant guilty beyond a reasonable doubt." *Id.*

To convict Ms. Meadows of health care fraud under 18 U.S.C. § 1347, the government was required to prove beyond a reasonable doubt that (1) she knowingly executed a scheme to defraud Medicaid, (2) with the intent to defraud, (3) in connection with payment for health care benefits or services, and (4) Medicaid is a public health care plan affecting commerce. *Golding*, 972 F.3d 1002 (8th Cir. 2020). Put in the statute's terms, the government had to prove that Ms. Meadows "knowingly and willfully executed, or attempted to execute," a scheme or artifice to

defraud a health care benefit program, or to obtain its money or property by false or fraudulent pretenses, in connection with the delivery of or payment for health care benefits. *Boesen*, 491 F.3d 852 (8th Cir. 2007). Because § 1347 requires proof of an "execution" of the scheme, the government's proof must be sufficient as to each charged execution — here, each discrete, dated claim.

Intent to defraud "need not be shown by direct evidence; it may be inferred from all the facts and circumstances." *Boesen*, 491 F.3d 852 (8th Cir. 2007). At the same time, good faith is a complete defense to the willful-intent element — the government must prove that the defendant "acted with the intent to do something that the law forbids, with a bad purpose." *Id.*

The Court's final instructions frame the sufficiency inquiry and confirm the content of these elements. The jury was instructed that "each count charges a separate crime," that it "must consider each count separately," and that it must "return a separate verdict for each count." Doc. 98, Instr. 8. It was further instructed that a defendant acts "willfully" only when she acts "voluntarily and intentionally with knowledge that the act is unjustifiable and unlawful,"; that "[r]eckless indifference alone is insufficient to establish the intent to defraud,"; and — critically — that "any potential violations of those [Medicaid] rules and/or regulations and/or state statutes by the defendant are not sufficient in and of themselves to prove the charges alleged in the indictment," *Id.*, Instr. 11. Proof that a provider's billing departed from program rules is therefore not proof of health care fraud.

The instructions also define the only two theories of liability submitted to the jury, and each required proof of Ms. Meadows's own fraudulent intent. The jury was charged on direct liability, (Instr. 11), and on aiding and abetting, (Instr. 13); it was not given a *Pinkerton* co-conspirator-liability instruction. The direct-liability instruction expressly directed that "[y]ou

must assess the evidence as to Ms. Meadows individually, and the government must prove beyond a reasonable doubt that she executed or attempted to execute the scheme with the required intent." Doc. 98, Instr. 11. The aiding-and-abetting instruction, in turn, required proof that Ms. Meadows knew health care fraud was being or would be committed, had "enough advance knowledge of the extent and character of the scheme to defraud" to be able "to walk away" before completion, knowingly acted to cause, encourage, or aid it, and acted "with intent to defraud" - and it cautioned that "[m]ere presence, knowledge, or association is insufficient." *Id.*, Instr. 13. Because no theory of vicarious liability was submitted, the convictions can stand only if the government proved that Ms. Meadows herself executed - or aided and abetted with intent to defraud - each specific charged claim.

Finally, Ms. Meadows recognizes that a conviction on one count may not be set aside merely because it appears inconsistent with an acquittal on another. *United States v. Powell*, 469 U.S. 57, 105 S. Ct. 471, 83 L. Ed. 2d 461 (1984); *United States v. Whatley*, 133 F.3d 601 (8th Cir. 1998). She does not ask the Court to do so. The controlling point is the one the Supreme Court itself identified in Powell: the defendant's protection against an unsupported conviction lies in "the independent review of the sufficiency of the evidence undertaken by the trial and appellate courts" under Rule 29(a) — review that is "independent of the jury's determination that evidence on another count was insufficient." *Powell*, 469 U.S. 57, 105 S. Ct. 471, 83 L. Ed. 2d 461 (1984). That is precisely the review Ms. Meadows invokes, count by count, below.

## ARGUMENT

### I. The evidence is insufficient to sustain the conviction on Count 2 (recipient S.R.).

Count 2 charges a single claim submitted on behalf of recipient S.R. for an approximate date of service of October 24, 2023, in the amount of $343.40. The government's theory was that this claim was false because S.R. was hospitalized during the relevant period and had no contact with Cradle of Love. The trial evidence did establish that S.R. was hospitalized from October 19 to October 26, 2023, that the stay was serious, and that she had no contact with Cradle during it. Trial Transcript at 11-13. Ms. Meadows does not minimize that evidence. But it does not establish that the single charged claim was false, still less that Ms. Meadows knowingly and willfully executed a fraudulent scheme through it. The charge is pleaded as an "on or about" date of service, and the jury was instructed that the government need only prove the offense "happened reasonably close to those dates." Doc. 98, Instr. 14. The coincidence of the claim date with S.R.'s hospitalization therefore neither proves nor disproves the claim; what the government had to prove - and did not - is that this claim was false and was executed by Ms. Meadows with intent to defraud.

First, the governing program allowed providers to bill for indirect housing-transition work - searching for housing, contacting landlords, and preparing and submitting applications - performed outside the recipient's presence and without the recipient's participation. S.R. herself confirmed she had no personal knowledge of how much time anyone spent searching for housing on her behalf behind the scenes. Trial Transcript at 244-245. She testified that her advocate, Tamico Reed, sent her housing listings one to two times per week and told her she had submitted applications to units on her behalf. *Id* at 233, 243. S.R. did not - and could not - testify that no such work was performed during the week of October 24, 2023. A recipient's hospitalization

does not render false a claim for indirect transition services that, by their nature, do not require the recipient's participation.

Second, the government's own case agent conceded the point. Special Agent Doty acknowledged that housing-research hours - including work performed by researchers and billed by advocates - could legitimately account for billed time that does not correspond to recipient contact, and that "if three legitimate hours were done," "no one's losing by billing it that way." Trial Transcript at 764-765. He further acknowledged that the HSS program imposed no limit on the number of hours a provider could bill in a given day or week within a recipient's annual allotment, so long as the work was supported. *Id* at 769. A single $343.40 claim - approximately five hours of billed service at the program's hourly rate - is fully consistent with lawful indirect transition work and is not, standing alone, evidence of fraud.

Third, and most important, the government offered no evidence that Ms. Meadows knowingly and willfully executed this particular claim with fraudulent intent. The charged claim was submitted in the ordinary course by Cradle's billing staff. Whether the theory is direct liability or aiding and abetting, the government still had to prove that Ms. Meadows acted with intent to defraud as to this claim - that she executed it, or knowingly aided its submission with intent to defraud. It proved neither. No evidence showed that Ms. Meadows knew S.R. had been hospitalized that week, knew that no compensable work had been performed, or directed the submission of this specific claim with knowledge of its falsity. The government's evidence that Cradle set recipients at a standard cadence of three to five hours per week - including an internal email noting that upon S.R.'s renewal the client would be billed "at 3 hours per week" (Trial Transcript at 932) - proves a billing practice, not the falsity of the October 24 execution or Ms. Meadows's fraudulent intent as to it. As the Eighth Circuit has instructed, the government's

evidence must do more than support an inference of generalized wrongdoing; it must support each element of the charged execution beyond conjecture. *Boesen*, 491 F.3d 852 (8th Cir. 2007). On this record, a finding that the October 24, 2023, claim was a knowing and willful execution of a scheme to defraud rests on speculation, not reasonable inference.

**II. The evidence is insufficient to sustain the convictions on Counts 4 and 5 (recipient M.F.).**

Counts 4 and 5 charge two claims submitted on behalf of recipient M.F. for approximate dates of service of October 19 and October 26, 2022, each in the amount of $412.08. The evidence as to these two discrete executions is insufficient in two independent respects.

First, the government did not prove that these specific October 2022 claims were executed, or aided and abetted, by Ms. Meadows with knowledge of their falsity and with intent to defraud. The advocate responsible for M.F. during the charged period was Kaleb Dowd. Trial Transcript at 766. M.F. testified that she never met Mr. Dowd and did not recall ever speaking with him, and she had no specific recollection of the October 2022 period at all, testifying only that Cradle was "supposed to be" helping her then. *Id* at 823. The government's own evidence showed that, to the extent Mr. Dowd overstated his time, that conduct was his - and that Cradle's management identified it and confronted him about his timesheets. *Id* at 919. The government's exhibit confronting Mr. Dowd stated that "it appears that you were deceptive on your timesheets." *Id.* That evidence cuts against the government, not for it: far from showing that Ms. Meadows knowingly executed a fraudulent scheme through the October 19 and 26 claims, it shows that any falsification of Mr. Dowd's hours was his, and that it was detected and addressed internally. Nor can it support conviction on an aiding-and-abetting theory. The jury was instructed that aiding and abetting requires that Ms. Meadows had "enough advance knowledge of the extent and character of the scheme to defraud" to "walk away" before completion, and that

"[m]ere presence, knowledge, or association is insufficient." Doc. 98, Instr. 13. Evidence that Ms. Meadows owned Cradle and that its management later caught Mr. Dowd's timesheet overstatements establishes, at most, association and after-the-fact knowledge - not advance knowledge of, or intent to defraud through, these two specific claims.

Second, the government did not prove the falsity of these two specific claims. M.F. could not recall the October 2022 services and could not say what work was or was not performed on the charged dates. She confirmed that Cradle employees filled out housing applications for her "over the phone" and that she provided identifying documents as "part of services" she received. Trial Transcript at 821-822. As with Count 2, a general sense that a recipient received fewer hours of service than were billed over the life of her enrollment does not establish that two particular, dated quarter-hour claims were false. The government's summary evidence of high internal timekeeping figures did not cure this gap: Special Agent Doty conceded that Cradle's internal Pavillio timekeeping records are not the HSS claims data and are not payroll, that he did not review the payroll records, and that the government was "not claiming that all of those hours" were "billed to the HSS program." *Id* at 776-779. A reasonable jury could not find, beyond a reasonable doubt and without resort to speculation, that the October 19 and October 26, 2022 claims were themselves false executions knowingly carried out by Ms. Meadows.

## III. The generalized "scheme" and program evidence does not supply the proof missing as to each charged execution.

The bulk of the government's proof concerned the alleged scheme in the aggregate - summary exhibits of claims data, internal timekeeping figures, and Ms. Meadows's general direction that staff bill several hours per week per beneficiary across each beneficiary's annual service-hour allotment. Even viewed most favorably to the verdict, that evidence does not

establish the falsity of the specific charged claims or Ms. Meadows's fraudulent intent as to them. And the jury was instructed that it could not convict on such a showing: "any potential violations of those [Medicaid] rules and/or regulations and/or state statutes by the defendant are not sufficient in and of themselves to prove the charges alleged in the indictment." Doc. 98, Instr. 11. Evidence that Cradle's billing practices departed from program norms, without proof that each charged claim was false and executed with intent to defraud, cannot sustain the convictions as a matter of law.

The government's case agents acknowledged that the practices it characterized as suspicious were, in substantial part, lawful features of the HSS program. Special Agent Doty agreed that dedicating a regular block of three to five hours per week to a sustaining client "is not unreasonable"; that the program imposed no per-day or per-week billing cap within a recipient's allotment; and that, across Cradle's approximately 401 clients, the average of roughly 143 billed hours per client fell well within the 300 hours (150 transitional, 150 sustaining) available to each recipient. Trial Transcript at 749, 751, 769, 770. He further acknowledged that the HSS program suffered significant software problems, and that there are problems in all Medicaid programs across the state — problems not attributable to Cradle. *Id* at 780-782. Evidence equally consistent with lawful billing as with fraud does not, as to any particular execution, permit a finding of guilt beyond a reasonable doubt.

That Ms. Meadows owned Cradle, reviewed its billing, and set a general billing cadence establishes her involvement in the business — not that she knowingly and willfully executed the three specific false claims charged in Counts 2, 4, and 5. The willful-intent element is distinct from the mere operation of the enterprise, and it must be proved as to each execution. *United States v. Dupont*, 672 F.3d 580 (8th Cir. 2012). That is equally true of the aiding-and-abetting

theory: ownership, billing oversight, and a general cadence are the very "[m]ere presence, knowledge, or association" the jury was told "is insufficient." Doc. 98, Instr. 13. Nor does the absence of any *Pinkerton* instruction permit the government to substitute others' conduct for Ms. Meadows's intent; the jury was told to "assess the evidence as to Ms. Meadows individually." *Id*., Instr. 11. The government proved a practice and a role; it did not prove, beyond conjecture, that these three dated claims were knowing and willful executions of a scheme to defraud by Ms. Meadows.

## IV. Independent sufficiency review under Rule 29 — not the jury's treatment of other counts — governs Counts 2, 4, and 5.

Ms. Meadows does not contend that the acquittals on Counts 1 and 3 require acquittal on the remaining counts, and she does not ask the Court to compare the proof across counts; inconsistent verdicts are not, standing alone, grounds for relief, and a conviction may not be set aside merely because it appears inconsistent with an acquittal on another count. *Powell*, 469 U.S. 57, 105 S. Ct. 471, 83 L. Ed. 2d 461 (1984); *Whatley*, 133 F.3d 601 (8th Cir. 1998). *Powell* makes clear that the safeguard against an unsupported conviction is independent judicial review of the sufficiency of the evidence - review "independent of the jury's determination that evidence on another count was insufficient." *Powell*, 469 U.S. at 67. That is the review Ms. Meadows invokes here. The question under Rule 29 is not whether the verdicts are consistent, nor how the convicted counts compare to the acquitted ones, but whether the government presented evidence on each element sufficient to sustain each conviction on its own proof. For the reasons stated in Parts I through III, it did not: as to each of Counts 2, 4, and 5, the record establishes a general billing practice and Ms. Meadows's operation of the business, but not that she executed - or aided and abetted with intent to defraud - the specific charged claim.

## CONCLUSION

For the foregoing reasons, Ms. Meadows respectfully requests that the Court grant her renewed motion for judgment of acquittal under Federal Rule of Criminal Procedure 29(c) and enter judgments of acquittal on Counts 2, 4, and 5. In the alternative, Ms. Meadows requests that the Court preserve the issue for post-trial briefing and for appeal.

Respectfully submitted,

**WOLD LAW**

Dated: October 19, 2026

/s/ Peter B. Wold
Peter B. Wold, No. 118382
331 Second Ave. S., Ste. 705
Minneapolis, MN 55401
612-341-2525